JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-1832 JGB (SPx)** | Date | June 23, 2026 |
|---|---|---|---|
| Title | ***Alishia Denise Ross v. Wal-Mart Associates, Inc., et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   Order (1) GRANTING Plaintiffs' Motion to Remand (Dkt. No. 14); (2) DENYING AS MOOT Defendants' Motion to Dismiss (Dkt. No. 9); and (3) VACATING the June 29, 2026 Hearing (IN CHAMBERS)**

Before the Court is plaintiff Alishia Denise Ross's motion to remand ("Motion," Dkt. No. 14). The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The June 29, 2026 hearing is **VACATED**.

## I.   BACKGROUND

On February 17, 2026, Plaintiff Alishia Denise Ross ("Plaintiff") filed a complaint in the Superior Court of California for the County of San Bernardino against defendants Wal-Mart Associates, Inc. ("Wal-Mart"), Cristal Hernandez ("Hernandez") (collectively, "Defendants"), and Does 1-25. ("Complaint," Dkt. No. 1-2.) Plaintiff alleges ten counts against Defendants: (1) sex/pregnancy discrimination in violation of the California Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code § 12940(a), et seq.), (2) pregnancy-related disability discrimination in violation of FEHA (Cal. Gov't Code § 12940(a), et seq.), (3) failure to accommodate in violation of FEHA (Cal. Gov't Code § 12940(m), et seq.), (4) failure to engage in an interactive process in violation of FEHA (Cal. Gov't Code § 12940(n), et seq.), (5) hostile work environment harassment in violation of FEHA (Cal. Gov't Code § 12940(j)), (6) retaliation in violation of FEHA (Cal. Gov't Code § 12940(h), et seq.), (7) failure to prevent discrimination, harassment, and retaliation in violation of FEHA (Cal. Gov't Code § 12940(k), et seq.), (8) negligent infliction of emotional distress, (9) intentional infliction of emotional distress, and (10) wrongful termination in violation of public policy. (Id. ¶¶ 29-134). On April 13, 2026,

Defendants removed the instant case to federal court.  ("NOR," Dkt. No. 1.)  On April 17, 2026, Defendants filed a motion to dismiss the complaint.  ("Motion to Dismiss," Dkt. No. 9.)

On May 13, 2026, Plaintiff filed the Motion.  (Motion.)  On May 22, 2026, Defendants opposed the Motion.  ("Opposition," Dkt. No. 16.)  On May 29, 2026, Plaintiff filed a reply in support of the Motion.  ("Reply," Dkt. No. 18.)

## II.    FACTUAL ALLEGATONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Defendant Wal-Mart hired Plaintiff on or around August 21, 2018 to work at Wal-Mart's eCommerce fulfillment center located in Chino, California.  (Compl. ¶ 14.)  Plaintiff worked for Wal-Mart for over six years and performed her job duties satisfactorily and professionally.  (Id.)  She received multiple wage increases and promotions and advanced to the position of Quality Assurance Associate/Clerk.  (Id.)  Plaintiff learned that she was pregnant on or around October 2, 2024.  (Id. ¶ 15.)  Shortly thereafter, Plaintiff experienced pregnancy-related medical complications.  (Id.)  These complications included severe nausea, fatigue, and other related symptoms that interfered with her ability to maintain regular attendance at work.  (Id. ¶ 15.)

Plaintiff requested pregnancy-related leave due to these complications on or around October 7, 2024.  (Id. ¶ 16.)  Wal-Mart's leave administrator, named "Sedgwick," denied the leave request as insufficient and directed Plaintiff to seek workplace accommodations.  (Id.)  On or around October 9, 2024, Plaintiff's medical care provider documented vaginal spotting and cramping and classified the pregnancy as high-risk due to Plaintiff's gestational diabetes and the size of the fetus.  (Id. ¶ 17.)  Plaintiff provided Wal-Mart medical documentation of her pregnancy shortly thereafter.  (Id.)

On or around October 17, 2024, Sedgwick approved pregnancy-related accommodations for Plaintiff and authorized pregnancy-related absences through June 12, 2025.  (Id. ¶ 18.)  Sedgwick notified Wal-Mart of the approval of these pregnancy-related accommodations for Plaintiff.  (Id.)  The approval did not limit Plaintiff's pregnancy-related absences to intermittent use and did not advise Plaintiff that consecutive absences required a different or additional process.  (Id.)

Plaintiff continued working intermittently while managing her pregnancy-related symptoms during November and December 2024.  (Id. ¶ 19.)  The last time Plaintiff reported to work in person was on or around January 4, 2025, when she reported a pregnancy-related late arrival following Wal-Mart's established reporting procedures.  (Id. ¶ 20.)

Plaintiff's pregnancy-related medical conditions worsened beginning on or around January 5, 2025.  (Id. ¶ 21.)  As a result, Plaintiff required consecutive absences from work.  (Id.)

Plaintiff properly reported her absences using Wal-Mart's designated reporting system each time she was unable to work and she identified her absences as pregnancy-related. (Id.)  Wal-Mart initially treated Plaintiff's absences as authorized. (Id.)

Nevertheless, Wal-Mart began reclassifying Plaintiff's pregnancy-related absences as unexcused and assessed attendance points against her. (Id. ¶ 22.)  By late January 2025, Wal-Mart had assessed sufficient attendance points such that Wal-Mart could discipline Plaintiff pursuant to Wal-Mart's attendance policy. (Id.)  On or around January 20, 2025, Plaintiff contacted Wal-Mart's human resources department ("HR") to complain about the notices of improper attendance and the assessment of points against Plaintiff notwithstanding the pregnancy accommodations previously approved through June 12, 2025. (Id. ¶ 23.)  Wal-Mart failed to provide clear guidance, to explain any deficiency in Plaintiff's compliance, and to engage in any interactive process regarding Plaintiff's pregnancy-related limitations. (Id.)

On or around February 9, 2025, Wal-Mart generated a letter, which asserted that Plaintiff had failed to report to work and warned her that, if she did not take immediate action, Wal-Mart could deem her to have voluntarily abandoned her position. (Id. ¶ 24.)  This letter was inconsistent with the prior approval of Plaintiff's pregnancy-related accommodations and did not indicate that her accommodations had been revoked or that her pregnancy-related absences were no longer protected. (Id.)  Plaintiff received this letter on February 12, 2025. (Id.)

Wal-Mart, through HR Manager Hernandez, terminated Plaintiff's employment on or around February 24, 2025. (Id. ¶ 25.)  Wal-Mart characterized the terminations as "job abandonment," which was solely based on Plaintiff's pregnancy-related absences and the accrual of attendance points while Plaintiff was protected by her pregnancy-related accommodation. (Id.)  Wal-Mart's People Partner, Elizabeth Beltran, informed Plaintiff of the termination to which Plaintiff promptly objected as wrongful, retaliatory, and discriminatory (Id.)  Plaintiff asserted that her termination caused her significant emotional and psychological distress. (Id.)

Hernandez contacted Plaintiff on or around February 25, 2025 and acknowledged that Plaintiff should not have been penalized for her pregnancy-related absences and that the termination should not have occurred. (Id. ¶ 26.)  Plaintiff was informed that the termination was wrongful and that her termination would be escalated for review to Salvador Mejia-Montano, a senior member of Wal-Mart's HR personnel. (Id.)  On or around March 4 or 5, 2025, Plaintiff held a brief call with Wal-Mart's HR and Ethics personnel to discuss her termination. (Id. ¶ 27.)  Wal-Mart failed to reinstate Plaintiff or otherwise correct the pregnancy-related termination. (Id.)  Plaintiff filed a complaint with the California Civil Rights Department on or around February 17, 2026 and subsequently received a Right-to-Sue Notice. (Id. ¶ 28.)

//
//
//
//
//

### III.   LEGAL STANDARD

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013) (internal quotation omitted). As such, federal courts have original jurisdiction only over civil actions in which a federal question exists or in which there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "[C]omplete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008).

The party seeking removal has the burden of establishing federal jurisdiction. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (internal citation omitted). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Because the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Doubts as to removability must be resolved in favor of remanding the case to state court. Matheson, 319 F.3d at 1090.

### IV.   DISCUSSION

Plaintiff alleges that Defendant Hernandez is a resident of California, which destroys diversity of citizenship between the parties. (Compl. ¶ 4; see Mot.) Defendants respond that Hernandez is a sham defendant included only for the purpose of defeating diversity jurisdiction. (Opp. at 5-6.)

In determining whether complete diversity exists, courts may disregard the citizenship of a fraudulently joined, non-diverse defendant. Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Id. (citing Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)). To establish fraudulent joinder the second way, a defendant must show that the joined, non-diverse party "cannot be liable on any theory." Id. (internal quotation omitted). "But 'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" Id. (citing Hunter, 582 F.3d at 1046).

"A court may look beyond the pleadings to determine if a defendant is fraudulently joined," Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1167 (E.D. Cal. 2011), including by considering "summary judgment-type evidence" such as declarations and deposition testimony. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001)

(citing <u>Cavallini v. State Farm Mutual Auto Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995)). "Fraudulent joinder must be proven by clear and convincing evidence." <u>Hamilton Materials, Inc. v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1206 (9th Cir. 2007). In other words, "[t]o support a claim that a nondiverse defendant has been fraudulently joined, the removing party must show that the plaintiff has failed to state a valid cause of action against that nondiverse defendant, and the 'settled rules of the state' must make the failure evident by clear and convincing evidence." <u>Tipton v. Airport Terminal Servs., Inc.</u>, 2019 WL 185687, at *5 (C.D. Cal. Jan. 14, 2019) (internal citation omitted).

Plaintiff first argues that she has sufficiently pled a cause of action as to Plaintiff's claim for harassment in violation of FEHA against Hernandez. (Mot. at 9.) Alternatively, Plaintiff sets out additional facts she would argue in an amended complaint to demonstrate that Hernandez is not a sham defendant. (<u>Id.</u> at 12-14.) To establish a claim for harassment in violation of FEHA, a Plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." <u>Ortiz v. Dameron Hosp. Assn.</u>, 37 Cal. App. 5th 568, 581 (2019). Plaintiff must further show "a concerted pattern of harassment of a repeated, routine or a generalized nature." <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 610 (1989). "[O]ccasional, isolated, sporadic, or trivial" harassment is insufficient to demonstrate "'sufficiently pervasive' harassment." <u>Id.</u> (internal citation omitted). If Plaintiff cannot "prove tangible job detriment," then Plaintiff must make a "commensurately higher showing that the . . . harassing conduct was pervasive and destructive of the working environment." <u>Id.</u> (internal citation omitted). Employees of companies subject to FEHA can also be "personally liable for any harassment prohibited" by FEHA. Cal. Gov't Code § 12940(j)(3). Defendants respond that Plaintiff's complaint fails to state a claim against Hernandez and that the additional facts set out by Plaintiff would also fail to state claim. (<u>See</u> Opp.)

However, the Court agrees with Plaintiff that "Defendants have not established that Plaintiff could not amend her pleadings and ultimately recover" against Hernandez. <u>Padilla v. AT & T Corp.</u>, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009). "The words fraud and sham imply a degree of chicanery or deceit, and a state court plaintiff engaging in a common strategy of pleading broadly does not engage in a fraud or sham." <u>Id.</u> at 1160. Plaintiff pleads that Hernandez terminated her, despite acknowledging that the termination "should not have occurred." (Compl. ¶ 122.) Furthermore, Plaintiff contends that she could plead additional facts that "Hernandez has a history or pattern of harassing pregnant employees." (Mot. at 13.) "[A] mere 'glimmer of hope' that the plaintiff could establish a claim is sufficient to defeat removal on the basis of fraudulent joinder." <u>Grancare, LLC v. Thrower</u>, No. C 15-05362 WHA, 2016 WL 1082780, at *5 (N.D. Cal. Mar. 21, 2016)

Because the Court determines that Hernandez is not a sham defendant on the basis of the FEHA claim, the Court need not consider Plaintiff's allegations as to Hernandez on the

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

remaining claims.  The Court **GRANTS** Plaintiff's Motion.  The Court consequently **DENIES AS MOOT** the Motion to Dismiss.

## V.    CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiffs' Motion and **REMANDS** the case to the California Superior Court, County of San Bernardino.  The Court **DENIES AS MOOT** the Motion to Dismiss.  The Clerk is directed to close the case.  The June 29, 2026 hearing is **VACATED**.

**IT IS SO ORDERED.**